IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

KIMBERLY HENRY, on behalf of
herself and all others similarly situated,

            Plaintiff,

v.                                  CIVIL ACTION NO.   3:17-1789

OCWEN LOAN SERVICING, LLC,

            Defendant.

**MEMORNDUM OPINION AND ORDER**

Pending before the Court is Defendant Ocwen Loan Servicing, LLC's Motion to Disburse Funds to Plaintiffs (ECF No. 57), its Motion to Dismiss Count One of Amended Complaint (ECF No. 58), its Motion for Judgment on the Pleadings (ECF No. 63), and Defendant's Request for Hearing. ECF No. 82. For the following reasons, the Court **DENIES, in part,** and **GRANTS, in part**, Defendant's motions.

**I.
FACTUAL BACKGROUND**

As this Court summarized in its November 16, 2017 Memorandum Opinion and Order *Henry v. Ocwen Loan Serv., LLC*, No. 3:17-1789, 2017 WL 5503718 (S.D. W. Va. Nov. 16, 2017), Plaintiff Kimberly Henry filed this action against Defendant on March 10, 2017. In her original Complaint, Plaintiff alleged that her house was destroyed by a fire in May of 2014. Despite the house being a complete loss with no change in equity, Plaintiff claimed that Defendant, who held a mortgage on her house, refused to give her insurance company a payoff quote until it

received a property appraisal.[1] In August 2014, Plaintiff's insurer sent Defendant a check for the total amount due on Plaintiff's monthly statements. Defendant acknowledged receipt of the funds on August 23, 2014. Nevertheless, Defendant did not apply the insurance proceeds to the loan balance, and it began collection efforts against Plaintiff.

In October 2014, Plaintiff retained counsel, who allegedly repeatedly contacted Defendant and requested that the insurance proceeds be applied to the loan and that collection efforts cease. According to Plaintiff, Defendant continued to not apply the proceeds to the loan and added fees and interest, threatened to evict her, claimed she owed additional funds, and reported she was delinquent to credit reporting agencies. As a result, Plaintiff filed this action, alleging violations of the West Virginia Consumer Credit and Protection Act (WVCCPA) (Count I), Outrage (Count II), Common Law Invasion of Privacy (Count III), Failure to Investigate (Count IV), and Conversion (Count V).

Soon after discovery commenced, Defendant produced a "Payoff Quote" dated September 4, 2014. This document provides, in part, for a "Satisfaction Cost," and that, "[i]f the account is past due, collection expenses and legal fees may be accruing." *Payoff Quote*, at 1-2, in part, ECF No. 31-2. Plaintiff asserts this language is an unlawful threat under the WVCCPA and, therefore, she moved to file a putative class action complaint on behalf of herself and others for additional violations of the WVCCPA. The Court granted the motion on November 16, 2017.

---

[1]Plaintiff asserts Defendant already had multiple appraisals in its possession.

Defendant states it was served a Right to Cure letter by Plaintiff pursuant to West Virginia Code § 46A-5-108 prior to the Amended Complaint being filed. In the letter, Plaintiff notified Defendant that she intended to amend her Complaint to add the class claims. Although Defendant believes Plaintiff's claims are without merit, it "offered to cure the issues identified in the Right to Cure Letter by payment of Five Thousand Dollars ($5,000) to Plaintiff." *Mot. to Deposit Money*, at ¶5, ECF No. 53. Plaintiff did not accept Defendant's offer.[2]

On December 7, 2017, Defendant filed a motion to place the money with the Court pending disposition by the Court. The Court granted the motion. Thereafter, on December 21, 2017, Defendant filed a Motion to Disburse Funds to Plaintiff and attached a proposed Order, and filed a Motion to Dismiss Count One of the Amended Complaint, which alleges violations of the WVCCPA. The Court entered the proposed Order on December 26, 2017 but, upon motion for reconsideration by Plaintiff, the Court realized it had done so in error because Plaintiff objected to the disbursement and did not have time to file a Response. Therefore, the Court vacated the Order on January 8, 2018. ECF No. 70. In the meantime, however, Defendant filed a Motion for Judgment on the Pleadings on January 3, 2018. All three of these motions are now pending before the Court.

## II.
## STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move for judgment on the pleadings after the pleadings are closed, provided such motion is early enough that it does not delay trial. In resolving a motion under Rule 12(c), the Court applies the same

---

[2]Defendant states it sent a supplemental cure offer on September 6, 2017, but Plaintiff did not accept it.

standard as Rule 12(b)(6) of the Federal Rules of Civil Procedure. *People for the Ethical Treatment of Animals v. United States Dep't of Agric.*, 861 F.3d 502, 506 (4th Cir. 2017). In other words, "such a motion should 'only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" *Id.* (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The complaint must contain facts sufficient "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (citations omitted). In resolving the motion, the Court may consider documents "integral to and explicitly relied on in the complaint," if the authenticity of the documents is not challenged. *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (citations omitted); *see also E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 448 (4th Cir. 2011) (stating "a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint" (citations omitted)). In this light, the Court considers the pending motions.

## III.
## DISCUSSION

With respect to Defendant's Motion to Dismiss Count One, Defendant argues it has a unilateral right to cure an alleged violation under West Virginia Code § 46A-5-108(a) to avoid an impending legal action. This section provides, in part:

> (a) No action may be brought . . . until the consumer has informed the creditor or debt collector . . . in writing . . . of the alleged violation and the factual basis for the violation and provide the creditor or debt collector . . . twenty days in the case a cause of action has already been filed to make a cure offer . . . *Provided*, That the consumer shall have twenty days from receipt of the cure offer to accept the cure offer or it is deemed refused and withdrawn. . . .

W. Va. Code § 46A-5-108(a), in part. Defendant maintains that, by tendering $5,000 to Plaintiff, it unequivocally has provided complete relief to her because, even assuming its "Payoff Quote" was a violation of the WVCCPA, Plaintiff's maximum recovery is $1,000,[3] plus a minor adjustment for inflation under the Act. As a result, Defendant asserts Plaintiff's claim is moot and the Court lacks subject matter jurisdiction over it.

On the other hand, Plaintiff argues, inter alia, that the $5,000 does not provide her complete relief because she requested actual damages in her Amended Complaint, as permitted by West Virginia Code § 46A-5-101(1). This section provides, in relevant part: "[i]f a creditor . . . has violated the provisions of this chapter . . . the consumer has a cause of action to recover: (a) Actual damages; and (b) a right in an action to recover from the person violating this chapter a penalty of $1,000 per violation[.]" W. Va. Code § 46A-5-101(1). As discovery is incomplete, Plaintiff states her actual damages remain unquantified, and she disputes that Defendant's $5,000 affords her complete relief.

This case is comparable to this Court's decision in *Smith v. Res-Care*, Civ. Act. No. 3:13-5211, 2013 WL 4546042 (S.D. W. Va. Aug. 28, 2013). In *Smith*, the Court addressed whether an offer of judgment under Rule 68 of the Federal Rules of Civil Procedure fully satisfied Plaintiff's claim for relief under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*, thereby mooting her claim. 2013 WL 4546042, at *4. Relying upon the Fourth Circuit's decision in *Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365 (4th Cir. 2012), *abrogated on other grounds*

---

[3]Defendant maintains the "Payoff Quote" does not violate the Act.

-5-

*by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016),[4] the Court determined "that, if a plaintiff seeks uncapped and unspecified damages, an unaccepted offer of judgment cannot be said to provide full relief." *Id*. (citation omitted). In considering the issue, the Court recognized there had not been an "evidentiary hearing or judicial fact-finding" on damages, and the Court found it would be inappropriate to involve itself in fact-finding during the early stages of discovery. *Id*. at *5. Therefore, the Court further concluded the plaintiff's claims were not moot, and it was unnecessary to determine whether "a justiciable case no longer exists." *Id*.

In this case, the Court reaches a similar result. The parties currently are engaged in discovery, and this Court has not entertained an evidentiary hearing or conducted any judicial fact-finding to determine the value of any actual damages Plaintiff may have incurred. Although Defendant insists she will not be able to show she suffered any actual damages, this Court is not in position to make such a declaration at the motion to dismiss stage of the proceedings. Defendant simply has not shown at this point that $5,000 satisfies Plaintiff's entire demand. Therefore, the Court finds Plaintiff's WVCCPA claim is not moot, and it is unnecessary for this Court to address the other issues raised by the parties. Accordingly, the Court **DENIES** Defendant's Motion to Dismiss Count One of Amended Complaint. In light of this decision, the Court further **DENIES**

---

[4]In *Warren*, the Fourth Circuit indicated that, "[w]hen a Rule 68 offer unequivocally offers a plaintiff all of the relief she sought to obtain, the offer renders the plaintiff's actions moot." 676 F.3d at 371 (internal quotation marks and citations omitted). In resolving a split amongst the Courts of Appeals on this issue, the United States Supreme Court held in *Campbell-Ewald*, that an unaccepted settlement offer under Rule 68 "has no force." 136 S. Ct. at 666. Although Defendant here argues this case is distinguishable from *Campbell-Ewald* because West Virginia Code § 46A-5-108(a) gives it a unilateral right to cure (a proposition Plaintiff disputes), the Court does not reach that issue for the reasons that follow.

Defendant's Motion to Disburse Funds to Plaintiff, and **DIRECTS** the Clerk of this Court to return such funds, with any interest accrued on those funds, to Defendant.

In addition to the foregoing arguments, Defendant further argues in its Motion for Judgment on the Pleadings that it is entitled to judgment on Count I for the reasons it previously asserted in its opposition to Plaintiff's Motion to Amend Complaint.[5] In the Memorandum Opinion and Order entered by this Court on November 16, 2017, the Court found that a decision on "what Defendant actually intended when it referenced 'legal fees' and 'Satisfaction Cost' and whether the language applied to Plaintiff and violates the WVCCPA" was premature because it was the initial stages of the case. *Henry*, 2017 WL 5503718, at *3. The Court determined Plaintiff's claim was at least plausible and, therefore, rejected Defendant's futility argument. Although Defendant now argues the Court should dismiss the claim, the Court disagrees and reaffirms its prior ruling that a decision on the matter is premature. Plaintiff has stated a plausible claim and is entitled to conduct discovery on her claim. Therefore, the Court **DENIES** Defendant's Motion for Judgment on the Pleadings as to Count I.

---

[5]Defendant asserts that the "Satisfaction Costs" referred to in the "Payoff Quote" is eleven dollars ($11.00), which is the required recording fee to record a release of the Deed of Trust. Defendant states that Plaintiff agreed to pay all recording costs in Paragraph 23 of the Deed of Trust. *See Deed of Trust*, at ¶23 ("Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs."). Thus, Defendant argues it did not violate the WVCCPA by informing Plaintiff that she would have to pay $11.00 to record the release at the county courthouse. Additionally, to the extent that the "Payoff Quote" provided that, "[i]f the account is past due, collection expenses and legal fees may be accruing[,]" Defendant claims "legal fees" is distinguishable from "attorney's fees," and it never charged Plaintiff attorney's fees or attempted to collect attorney's fees from her. Moreover, Defendant argues that the language is inapplicable to Plaintiff because she maintains she was not in default.

In Count II, Plaintiff alleges that Defendant violated the WVCCPA by (1) using the phone to call her "at times known to be inconvenient, with the intent to annoy, abuse or oppress . . . [her] in violation of *West Virginia Code* § 46A-2-125(d)[;]" (2) "failing to credit amount paid upon receipt from . . . [her] in violation of *West Virginia* § 46A-2-115(c)[;]" and (3) "attempting to collect a debt by threats and coercion with threats of foreclosure and eviction in violation of *West Virginia Code* § 46A-2-124[.]" *First Am. Class Action Compl.*, at ¶54, ECF No. 49. Defendant argues it is entitled to judgment on all these claims.

As to the first allegation, Plaintiff responded to Defendant's motion by stating that she "will not pursue her claims based on violations of W. Va. Code § 46A-2-125(d) relating to the volume of telephone calls, but will demonstrate that she received harassing telephone calls that constituted an invasion of privacy." *Pl.'s Mem. in Opp. to Def.'s Mot. for J. on the Pleadings*, at 16 n.4, ECF No. 72.[6] Given this representation, the Court **GRANTS** Defendant's motion with respect to the first allegation in Count II.

Next, Defendant argues that Plaintiff cannot succeed on her second allegation in Count II that claims it failed to apply her insurance payment to her mortgage in violation of *West Virginia* § 46A-2-115(c). Defendant argues that the procedure it used by placing the money in a "suspense account" until it finished its investigation as to whether Plaintiff's house could be repaired was consistent with the language of the Deed of Trust which provides, in part:

---

[6]West Virginia § 46A-2-125(d) provides, in relevant part: "Calling any person more than thirty times per week or engaging any person in telephone conversation more than ten times per week, or at unusual times or at times known to be inconvenient, with intent to annoy, abuse, oppress or threaten any person at the called number." W. Va. Code § 46A-2-125(d), in part.

> In the event of loss, . . . "[u]nless Lender and Borrower otherwise agree in writing, any insurance proceeds . . . shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. . . . If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument . . . .

*Deed of Trust*, at 7, ECF No. 54-6, at 8. Plaintiff argues, however, that Defendant completely ignores the language in the Deed to Trust related to the economic feasibility of restoring the house. Plaintiff states the house was beyond repair so she had the house torn down, and she put a double-wide house on the property. Despite these facts and the fact her insurer sent Defendant a check to pay off the balance of the loan, Plaintiff states that Defendant refused to use the money to pay off the loan and, instead, pursued debt collection against her. Although Defendant maintains the house was repairable before it was torn down, the Court finds this is a factual dispute and the parties should be permitted to conduct discovery on the issue.

Defendant further argues that it does not matter if there is a factual dispute regarding whether the house could be repaired because it has a right under the Deed of Trust, as a matter of law, to hold the proceeds until economic feasibility is determined one way or another. However, in this case, Plaintiff alleges the house burnt in May of 2014, Defendant was sent a complete payoff of the mortgage in August 2014, Defendant acknowledged it received "[p]ayoff funds" on August 23, 2014, and Plaintiff tore down the house and put a double-wide on the lot. *First Am. Class Action Compl.*, at ¶¶5-14; *Pl.'s Mem. in Opp. to Def.'s Mot. for J. on the Pleadings*,

at 2.[7] Plaintiff claims that Defendant was aware there was nothing left to appraise but, nevertheless, still refused to apply the funds to the mortgage by the time this action was filed in March 2017, approximately thirty-one months after receiving the payment. Certainly, even if the Court assumes, without deciding, that Defendant had the right to hold the proceeds under the Deed of Trust pending an investigation, that investigation should have concluded, at the very latest, once Defendant learned the burned house was torn down and no longer existed. Plaintiff alleges, however, that despite Defendant's knowledge the house was gone, it continued to refuse to apply the proceeds to pay off the mortgage. Although Defendant asserts Plaintiff failed to sign certain paperwork it required so it could use the insurance proceeds as Plaintiff wanted, it is clear to the Court that the circumstances of this case require discovery to resolve these issues because these are all factual issues that the Court will not resolve at this point in the proceedings. *See Hill v. Wells Fargo Bank, N.A.*, Civ. Act. No. 3:09-0487, 2010 WL 2426001, at *3 (S.D. W. Va. June 9, 2010) (holding on summary judgment in a case where a house burned that "a genuine issue of material fact [existed] regarding the economic feasibility of rebuilding and whether such information was known or should have been known by Defendant"). Therefore, the Court **DENIES** Defendant's motion with respect to the second allegation in Count II.

The Court reaches the same result as to the third part of Count II, in which Plaintiff alleges Defendant violated West Virginia Code § 46A-2-124 by using threats and coercion with threats of foreclosure and eviction in its attempts to collect a debt. Defendant argues that, because Plaintiff failed to make her periodic mortgage payments, it had a right under the Deed of Trust to

---

[7]Plaintiff states that her double-wide house is not subject to Defendant's prior lien, yet Defendant "sent inspectors to document . . . [its] condition . . ., still claiming an interest in Plaintiff's property." *Id.*

collect the debt, including foreclosure. However, resolution of whether or not Defendant should have used the funds to pay off Plaintiff's mortgage will impact whether Defendant was justified in attempting to collect the debt. Moreover, even if Defendant did have a right to collect the debt, the statute still prohibits debt collectors from "collect[ing] or attempt[ing] to collect any money alleged to be due and owing by means of any threat, coercion or attempt to coerce." W. Va. Code § 46A-2-124, in part. Thus, as these issues should be explored during the discovery, the Court **DENIES** Defendant's motion with respect to the third allegation in Count II.

Turning to Count III, Plaintiff alleges a tort of outrage as a result of the manner in which Defendant handled her case. In order to state a claim of outrage in West Virginia (also known as a claim of intentional infliction of emotional distress), a plaintiff must show:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. Pt. 3, *Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419 (W. Va. 1998). In deciding if conduct is outrageous, this Court first must determine as a matter of law whether Defendant's "conduct may reasonably be regarded as so extreme and outrageous as to constitute the intentional or reckless infliction of emotional distress." *Id*. at Syl. Pt. 4. It is for a jury to determine whether Defendant's conduct was in fact outrageous. *Id*.

In this case, Defendant argues its conduct cannot be considered outrageous. Upon review, the Court completely disagrees. Assuming the truth of Plaintiff's allegations, the Court has

-11-

no difficulty finding that Defendant's actions could be considered outrageous. Although Defendant insists it acted within the terms of the contract, as stated above, that issue is yet to be resolved. Therefore, the Court **DENIES** Defendant's motion with respect to Count III.

In Count IV, Plaintiff alleges a claim for Invasion of Privacy because Defendant "repeatedly and unlawfully attempt[ed] to collect a debt and call[ed] Plaintiff's telephone, and attempt[ed] to foreclose upon . . . [her] real property[.]" *First Am. Class Action Compl.*, at ¶64. In West Virginia, an invasion of privacy claim is recognized in four areas: "'(1) an unreasonable intrusion upon the seclusion of another; (2) an appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity that unreasonably places another in false light before the public.'" *Carroll v. USAA Sav. Bank*, Civ. Act. No. 3:16-11120, 2017 WL 811491, at *4 (S.D. W. Va. Mar. 1, 2017) (quoting *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 85 (W. Va. 1985)). Plaintiff asserts her claim falls under the first category because Defendant's debt collection efforts unreasonably intruded upon her seclusion. An intrusion upon seclusion occurs when "'[o]ne . . . intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, . . . if the intrusion would be highly offensive to a reasonable person.'" *Id*. (quoting *Harbolt v. Steel of W. Va., Inc*., 640 F. Supp. 2d 803, 817 (S.D. W. Va. 2009) (other citations omitted)).

Without citing any case law in support, Defendant asserts that any alleged intrusion could not be a "private" affair or concern because the parties were in a contractual agreement. However, Defendant's argument completely ignores the word "or" before the phrase "private affairs or concerns." An intrusion also may occur "upon the solitude or seclusion of another." In

fact in *Carroll*, this Court permitted an invasion of privacy claim to proceed past the motion to dismiss stage where a bank was alleged to have telephoned the plaintiff multiple times after the defendant had notice the plaintiff was represented by counsel. *Id.* The Court finds no reason why the result should be any different in this case. Therefore, the Court finds that Plaintiff has stated a plausible claim and **DENIES** Defendant's motion with respect to Court IV.

In Count V, Plaintiff claims that Defendant "violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate . . . [her] disputes of the representations"[8] and "15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title."[9] *First Am. Class Action Compl.*, at ¶¶ 68 & 69. Defendant argues Plaintiff has not stated a claim under the FCRA because Plaintiff only has made a conclusory statement Defendant failed to investigate and such allegation cannot withstand scrutiny under Rule 12(b)(6).[10] Additionally, Defendant maintains it provided the credit reporting agencies accurate information because Plaintiff was in default on her loan.

---

[8]This section provides: "After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--(A) conduct an investigation with respect to the disputed information[.]" 15 U.S.C. § 1681s-2(b)(1)(A).

[9]Section 1681s-2(b)(1)(B) states: "After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall-- . . . (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title[.]" 15 U.S.C. § 1681s-2(b)(1)(B).

[10]Defendant also argues Plaintiff cannot state a claim under the FCRA for inaccurately reporting information. However, Plaintiff's claim is for a failure to investigate.

To state a claim under § 1681s-2(b)(1)(A), Plaintiff must set forth facts, assuming their truth, that show Defendant failed to conduct a reasonable investigation of the disputed information. *See Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004) (holding "§ 1681s-2(b)(1) requires creditors, after receiving notice of a consumer dispute from a credit reporting agency, to conduct a reasonable investigation of their records to determine whether the disputed information can be verified"). In addition, to state a claim under § 1681s-2(b)(1)(B), Plaintiff must plead facts, if taken as true, that show Defendant failed to review the information provided to it by the consumer reporting agency. Here, Plaintiff alleges her insurer provided Defendant a payoff of her mortgage and both she and her attorney requested the money be applied toward the mortgage because the house was beyond repair and torn down, but Defendant refused to apply the money to the mortgage, and Defendant reported she was delinquent on her loan to the credit reporting agencies. Plaintiff claims she disputed the reports with the credit reporting agencies and, after receiving notice of the disputes, Defendant falsely confirmed she was delinquent and facing foreclosure. Plaintiff further states that "Defendant refused to investigate the status of Plaintiff's mortgage loan and instead sought foreclosure when a simple investigation would reveal that Defendant was paid in full." *First Am. Class Action Compl.* at ¶57(h). Upon review of these allegations, assuming their truth, the Court finds they are sufficient to state a plausible claim and survive a motion to dismiss.

Finally, Defendant moves to dismiss Count VI of Plaintiff's Complaint for Conversion. In a footnote to her Response, Plaintiff states "she is willing to dismiss [her conversion claim] . . . for purposes of streamlining the litigation." *Pl.'s Mem. in Opp. to Def.'s Mot. for J. on*

*the Pleadings*, at 12 n.3. Therefore, the Court **GRANTS** Defendant's motion with respect to Count VI.

## IV.
## CONCLUSION

Accordingly, for the foregoing reasons, the Court **DENIES** Defendant's Motion to Dismiss Count One (ECF No. 58), **DENIES** Defendant's Motion to Disburse Funds to Plaintiff (ECF No. 57), and **DIRECTS** the Clerk of this Court to return such funds to Defendant, with any interest accrued on those funds. With respect to Defendant's Motion for Judgment on the Pleadings (ECF No. 63), the Court **DENIES** the motion as to Counts I, III, IV, V, and the second and third allegations in Count II. The Court **GRANTS** Defendant's motion with respect to the first allegation in Count II and Count VI. Having resolved all the substantive issues, the Court finds a hearing unnecessary and **DENIES** Defendant's Request for Hearing. ECF No. 82.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:　　　June 25, 2018

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE